UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ABDIRASHID H. M.,

                Petitioner,

v.

KRISTI NOEM, *Secretary of U.S. Department of Homeland Security*; TODD M. LYONS; *Acting Director of Immigration and Customs Enforcement*; PETER BERG, *Director, St. Paul Field Office, Immigration and Customs Enforcement*; SAMUEL J. OLSON, *Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement*; and JOEL BROTT, *Sheriff of Sherburne County Jail, Minnesota*,

                Respondents.

Civil No. 25-4779 (JRT/EMB)

**MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Evangeline Surya Ester Dhawan-Maloney, **ROBICHAUD, SCHROEPFER & CORREIA, PA**, 7500 Olson Memorial Highway, Suite 325, Minneapolis, MN 55427, for Petitioner.

Ana H. Voss, Erin M. Secord, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 for Respondents.

Petitioner Abdirashid H. M. ("Petitioner") was arrested by United States Immigration and Customs Enforcement ("ICE") in December 2025. Petitioner seeks a writ of habeas corpus, asserting that he is being detained without a bond hearing in violation of the Immigration and Nationality Act and the Due Process Clause of the Fifth

Amendment. The Court concludes that Petitioner's detention is lawful, if at all, under the discretionary scheme of 8 U.S.C. § 1226(a), and that he is not subject to mandatory detention under 8 U.S.C. § 1225. The Court further concludes that detaining Petitioner without a bond hearing is a violation of his right to due process. Accordingly, the Court will grant the petition for a writ of habeas corpus and order that Petitioner receive a bond hearing.

## BACKGROUND

Petitioner is a native and citizen of Somalia. (Decl. of James L. Van Der Vaart ("Van Der Vaart Decl.") ¶ 4, Jan. 2, 2026, Docket No. 6.)[1] He first entered the United States on October 21, 2024, and was arrested by immigration authorities. (Pet. Writ of Habeas Corpus ("Pet.") ¶ 1, Dec. 26, 2025, Docket No. 1.)

On October 30, 2024, Petitioner claimed a fear of returning to his home country. (Van Der Vaart Decl. ¶ 5.) He took part in a credible fear interview on November 18, 2024. (Decl. of Abdirashid H.M. ("H.M. Decl.") ¶ 1, Jan. 5, 2025, Docket No. 7-1.) USCIS found that Petitioner had a credible fear of returning to Somalia and issued a Notice to Appear in immigration court in Los Angeles, California. (Van Der Vaart Decl. ¶ 7.) The Notice to Appear charged Petitioner as removable under the Immigration and Nationality Act. (*Id.*

---

[1] James L. Van Der Vaart, a Deportation Officer with ICE, has submitted a declaration setting forth the facts relevant to Mohamed's detention.

¶ 7, Ex. 2.)  Petitioner's immigration proceedings were subsequently transferred to St. Paul, Minnesota.  (*Id.* ¶ 8.)

On November 26, 2024, ICE released Petitioner on parole through the Alternatives to Detention program.  (*Id.* ¶ 9.)[2]  Two months later, on January 22, 2025, Petitioner filed an I-589 asylum application.  (Pet. ¶ 3.)  For over a year following his release, Petitioner remained paroled from custody.  He was "required to check in with ICE via visits, phone calls, and by sending photos of myself" via "an app that the government installed on my phone."  (H.M. Decl. ¶ 2.)  Petitioner states that he "never missed a check-in or otherwise violated a condition of [his] release."  (*Id*. ¶ 3.)

On December 4, 2025, ICE arrested Petitioner.  (Pet. ¶ 4.)[3]  According to Petitioner, ICE officers arrested him in the parking lot outside his residence in Hopkins, Minnesota, without providing any reason for the arrest.[4]  (H.M. Decl. ¶ 4.)  Petitioner has since been detained at the Sherburne County Jail.  (Pet. ¶ 5.)

---

[2] Petitioner's asserted timeline is slightly different—he states that "on or about December 2, 2024" he was "released . . . on his own recognizance" under 8 U.S.C. 1226.  (Pet. ¶¶ 12, 24, Exs. A, B.)

[3] Respondents contend that Petitioner was arrested due to "multiple violations" of the terms of the Alternatives to Detention program.  (Van Der Vaart Decl. ¶ 10.)  Petitioner denies that these violations occurred.  (Response to Declaration, Jan. 5, 2026, Docket No. 7.)

[4] Petitioner speculates that he was arrested "possibly on a tip from his neighbors that immigrants were living in the house next door," and states that "[i]t appears the only reason that Petitioner was detained is because he is Somali."  (Pet. ¶ 4.)

On December 26, 2025, Petitioner filed a Petition for Writ of Habeas Corpus. (Docket No. 1.) Petitioner contends, among other things, that his detention without a bond hearing is unlawful under federal statute and violates his rights to due process under the Fifth Amendment. He asks the Court for an order declaring that he is entitled a bond hearing. (*Id.* at 17.)

## DISCUSSION

It is well-established that "absent suspension" by Congress, the Constitution guarantees that the "writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. 1. § 9, cl. 2). The writ of habeas corpus has served as a vital check on executive power throughout our nation's history. A petitioner must prove unlawful detention by a preponderance of the evidence. *E.g., Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

Petitioner, arrested by ICE on December 4, 2025, contends that his detention without a bond hearing is unlawful. Respondents argue that Petitioner is subject to mandatory detention, and therefore not entitled to a bond hearing, under two separate statutory provisions: 8 U.S.C. § 1225(b)(1), and § 1225(b)(2). The Court will first address the applicability of the relevant statutes, before turning Petitioner's claim that his detention without a bond hearing violates his due process rights.

A.     **Statutory Basis for Petitioner's Detention**

Petitioner argues that the sole statutory provision that authorizes his arrest and detention is 8 U.S.C. § 1226(a), which provides that he must be granted an individualized bond hearing.

Respondents disagree.  First, Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  This argument mirrors those advanced by Respondents in other similar cases, including *Herrera Avila v. Bondi*, No. 25-3741, 2025 WL 2976539 (D. Minn. Oct. 21, 2025) and *Romero Santuario v. Bondi*, No. 25-4296, 2025 WL 3469577 (D. Minn, Dec. 2, 2025).  As in those cases, the factual record before the Court shows that Petitioner was arrested while already in the United States.  Indeed, Petitioner's Notice to Appear designated him as someone "present in the United States who has not been admitted or paroled."  (Van Der Vaart Decl. ¶ 7, Ex. 2.) For the same reasons articulated in *Herrera Avila* and *Romero Santuario*, the Court concludes that Petitioner's detention is not governed by § 1225(b)(2).

Respondents argue "[i]n the alternative" that Petitioner is subject to mandatory detention under 8 U.S.C. 1225(b)(1)(B)(ii).[5] (Response at 8, Jan. 2., 2026, Docket No. 5.) The U.S. Supreme Court has previously discussed the relationship between §§ 1225(b)(1) and (b)(2):

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

*Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018) (alterations in original).

The subsection on which Respondents rely, § 1225(b)(1)(B)(ii), provides that if an immigration officer "determines at the time of the interview that an [asylum applicant] has a credible fear of persecution," then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Petitioner was interviewed and found to have a credible fear of returning to Somalia, which seems to

---

[5] Respondents are not entirely clear as to whether they believe that Section 1225(b)(2) does in fact provide a statutory basis for Petitioner's mandatory detention. Respondents argue extensively that the Court "should uphold Petitioner's mandatory detention under § 1225(b)(2)," but they later contradict themselves, stating that Petitioner "is not subject to § 1225(b)(2) or the government's contested interpretation of it." (Response at 6, 11, Jan. 2, 2026, Docket No. 5.)

bring him under the umbrella of this section. (H.M. Decl. ¶ 1.) But critically, no party to this case has cited any binding authority addressing whether mandatory detention is permissible when an individual who participates in a credible fear interview is paroled into the country (as Respondents acknowledge Petitioner was, *see* Response at 13, Jan. 2, 2026, Docket No. 5), or placed in full removal proceedings and released into the community on recognizance under § 1226(a) (as Petitioner also appears to have been, *see* Pet. ¶ 2, Exs. A, B), only to be suddenly re-arrested without notice, and held without bond.

The Court finds a recent decision from the Southern District of New York, *Qasemi v. Francis*, Civ. No. 25-10029, 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), to be instructive. *Qasemi*, like this case, involved a noncitizen previously found to have a credible fear of returning to their home country who was subsequently placed on parole. *Id.* at *9. The court held that the noncitizen was not subject to mandatory detention under § 1225(b)(1)(B)(ii), even upon the termination of parole, because the relevant statutes are "most sensibly read to exclude from the expedited removal provisions in Section 1225(b)(1) those noncitizens who . . . were at any time paroled into the United States." *Id.* The court concluded that "when ICE affirmatively chose to release Qasemi on parole, it made the decision that he would no longer be subject to the mandatory detention provision of Section 1225(b)(1)," and that his detention must instead "be conducted under the discretionary framework of Section 1226(a)." *Id.* at *11.

The Court finds this reasoning to be consistent with the principle that § 1226 "applies to [noncitizens] already in the United States," *Jennings*, 583 U.S. at 289, as well as the text and structure of the relevant statutes. Accordingly, the Court concludes that § 1225(b)(1)(B)(ii), which provides for the initial mandatory detention of noncitizens subject to § 1225(b)(1) who are found to have a credible fear of persecution in their home country, does not authorize the mandatory detention of that noncitizen once they have been paroled into the country and released.[6] To the extent that Petitioner's present detention is authorized by federal statute, it is pursuant to the discretionary detention scheme under § 1226(a).

**B.    Due Process**

The Court separately concludes that Petitioner's detention without bond violates the Due Process Clause of the Fifth Amendment.

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir.

---

[6] Moreover, unlike the petitioner in *Qasemi*, who did "not dispute that his parole status has ended," in this case Petitioner never received any notice that his parole status had ended.

-8-

2003) ("The Supreme Court has long recognized that deportable [noncitizens] are entitled to constitutional protections of due process.").

When a noncitizen alleges that civil detention violates their right to due process, courts often apply the three-part test derived from *Mathews v. Eldridge,* 424 U.S. 319 (1976). *See, e.g.*, *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1185 (D. Minn. 2025). The three relevant factors to assessing a due process claim are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner does not seek full release—rather, he seeks a bond hearing. He argues that because he "was previously released on his own recognizance, has a private interest in being free from detention"; that a bond hearing is necessary to allow him to challenge Respondents' asserted basis for his arrest (that he violated the terms of his parole); and that a bond hearing will impose only a minimal burden on the government. (Pet'r's Reply at 4–5, Jan. 5, 2025, Docket No. 7.)[7]

---

[7] Respondents do not address Petitioner's due process claim.

Turning to the first *Mathews* factor, Petitioner's private interest, it is axiomatic that "the interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Importantly, prior to his arrest, Petitioner had been released from Respondents' custody on parole as part of the Alternatives to Detention program. The Court joins several district courts around the country in recognizing the self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their "continued liberty." *See, e.g., Hernandez-Fernandez v. Lyons,* No. 5:25-CV-00773, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025); *Diaz v. Kaiser*, No. 3:25-cv-0571, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025). Although the length of Petitioner's detention to this point is brief, which weighs against finding a due process violation, the Court considers the potential indefinite nature of his detention, after the sudden revocation of his release, to weigh in favor of relief.

Second, the Court considers there to be a high degree of risk of erroneous deprivation given the lack of process that occurred prior to the de facto revocation of Petitioner's parole through his arrest on December 4. Petitioner, who had been living and working in his community since his release from custody, contends that he never "violated any conditions of [his] release" and has cooperated fully with ICE throughout the pendency of his asylum application. (H.M. Decl. ¶ 3.) Respondents dispute Petitioner's characterization of the facts, alleging that he was arrested "due to multiple

violations" of his release program, "missing three . . . separate biometric check ins over a 10 month period in 2025." (Van Der Vaart Decl. ¶ 10.) Given (1) these contradictory recitations of the facts; (2) that ICE approached Petitioner at his home and arrested him without providing any rationale; (3) that Respondents appear not to have provided Petitioner with any reason for his arrest until their filings to the Court; and (4) that Respondents have not provided the Court with any evidence of parole violations, the Court concludes that the second *Mathews* factor weighs in favor of granting the petition. The risk of erroneous deprivation of Petitioner's interest in his "continued liberty" is high, and additional procedural safeguards—specifically, individualized bond hearing—would alleviate these risks.

    Third, the Court finds that an order compelling the government to provide Petitioner with a bond hearing would impose minimal, if any, financial or administrative burden on Respondents. Moreover, aside from asserting that they have the authority to do so, Respondents identify no additional rationales, such as public safety, supporting the need to detain Petitioner without bond hearing.

    On these narrow facts, the Court concludes that Petitioner's detention without a bond hearing constitutes a violation of his Fifth Amendment due process rights.

## CONCLUSION

    The Court concludes that Petitioner's arrest is authorized only under the discretionary detention scheme of § 1226. The Court separately concludes that

Respondents' arrest and detention of Petitioner without providing him with an individualized bond hearing constitutes a violation of his rights under the Due Process Clause. The Court will grant the petition for a writ of habeas corpus and order that Petitioner be given a bond hearing at which both parties will be allowed to present evidence and argument as to whether Petitioner is a danger to the community or presents a flight risk.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Abdirashid H.M.'s Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**, as follows:

    a. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b), and is instead subject to detention, if at all, pursuant to 8 U.S.C. § 1226(a);

    b. Petitioner's detention without an individualized bond hearing violates his rights under the Due Process Clause of the Fifth Amendment;

    c. Respondents shall provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) within 7 days of the date of this Order, in which the parties will be allowed to present evidence and argument about whether Petitioner is a danger to the community and presents a flight risk if not detained;

    d. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and

    e. Within 10 days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

2. Respondents are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota before the ordered bond hearing. After such bond hearing, Respondents may request permission from the Court to move Petitioner if unforeseen or emergency circumstances arise which require Petitioner to be removed from the District. Any such request must include an explanation for the request as well as a proposed destination. The Court will then determine whether to grant the request and permit transfer of Petitioner.

-14-

3. Within 3 days of the date of this Order, the parties shall file any requests for redaction.

DATED: January 9, 2026
at Minneapolis, Minnesota.

*John R. Tunheim*
JOHN R. TUNHEIM
United States District Judge